PEARL BROWN, Plaintiff-Appellant, v. JEWEL COMPANIES, INC., *et al.*, Defendants-Appellees.

Fourth District   No. 4—88—0226

Opinion filed October 6, 1988.—Rehearing denied November 28, 1988.

Harold F. Tenney and Carl J. Tenney, both of Decatur, for appellant.

Mark E. Jackson, of Samuels, Miller, Schroeder, Jackson & Sly, of Decatur, for appellees.

PRESIDING JUSTICE GREEN delivered the opinion of the court:

On October 26, 1987, plaintiff filed suit in the circuit court of Macon County against defendants Jewel Companies, Inc., and Osco Drug, Inc. After that complaint was dismissed on defendants' motion, an amended complaint was filed against the same defendants, who again moved to dismiss for failure to state a cause of action. (Ill. Rev.

Stat. 1987, ch. 110, par. 2—615.) On March 2, 1988, the court allowed that motion, granting plaintiff a further opportunity to amend. Plaintiff elected to stand on the amended complaint and, on March 23, 1988, the court entered judgment in bar of action in favor of both defendants. Plaintiff has appealed. We determine that each count contains allegations of a cause of action but also purports to impose liability based on allegations which do not set forth a tort. Accordingly, we reverse the order of dismissal and remand for further proceedings with directions that much of the complaint be ordered stricken.

Plaintiff's amended complaint is apparently directed against each defendant in separate counts, but each count makes the same allegations because plaintiff contends defendants together were the operators of a combined grocery and drug store in a mall in Decatur on April 7, 1987, the date of the alleged incident in question. She alleged defendants employed security guards to protect against shoplifting. She also alleged the "guards customarily pursued and apprehended suspected shoplifters on the store premises," and "some of *** [those apprehended] had fled or attempted to flee through the exit" of the store in the past. The amended complaint further set forth that defendants (1) knew their self-service method of operation made shoplifting on the premises more likely, and (2) should have anticipated shoplifters would be pursued by the guards and injure customers in the course of their flight.

The amended complaint then alleged: (1) on April 7, 1987, plaintiff was a customer in defendants' store, and was in the process of leaving, when a suspected shoplifter, being chased by guards, knocked plaintiff through a door and onto a sidewalk, whereupon a chasing security guard kicked or stepped on plaintiff's foot, injuring her further. That complaint maintained the security guard had stopped the accused shoplifter near the exit to the store, but the guard's effort to seize the shoplifter was unsuccessful.

The complaint further alleged defendants were negligent and violated their duty under section 2 of the Premises Liability Act (Ill. Rev. Stat. 1985, ch. 80, par. 302), in that their security guard:

"(a) *** failed to restrain the suspect;

(b) *** failed to block the suspect's path to the exit;

(c) *** pursued the suspect when he knew or should have known that customers would thereby be endangered;

(d) *** failed to keep a proper lookout while pursuing the suspect;

(e) *** failed to avoid plaintiff's foot;

(f) *** failed to apprehend the suspect at a place where her

flight would not jeopardize other persons on the store premises; [and]

(g) [defendants] failed to properly train [their] security guard in the restraint and pursuit of suspected shoplifters."

Finally, the complaint contained allegations of proximate cause and plaintiff's injury.

Any contention that the complaint here is multifarious because any cause of action for the pursuing security guard's negligence in stepping on or colliding with plaintiff was separate from a cause of action for the defendants' negligence arising from the suspected shoplifter's flight from the security guard and collision with plaintiff is not of significance. Sections 2—603(b) and 2—613(a) of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, pars. 2—603(b), 2—613(a)) require separate causes of action to be stated in separate counts. However, the failure of defendants to raise that issue in the trial court waives any such claim of error on appeal. (*Valario v. Heldson* (1978), 66 Ill. App. 3d 1014, 384 N.E.2d 502.) Because of the nature of our decision here, no question of duplicity will exist on remand.

▮▮ Section 2 of the Premises Liability Act abolishes the common law distinction between invitees and licensees in regard to duty owed by owners and occupiers of premises to such persons and describes the duty owed to both invitees and licensees as "that of reasonable care under the circumstances regarding the state of the premises or *acts done or omitted on them.*" (Emphasis added.) (Ill. Rev. Stat. 1985, ch. 80, par. 302.) The allegation contained in the two counts which charges the pursuing guard with failing to keep a proper lookout during the chase and failing to avoid plaintiff's foot sets forth a cause of action in favor of plaintiff for an act of negligence by that guard which was a proximate cause of injury to plaintiff. Clearly, under the allegations, the guard owed a duty to plaintiff to use care not to injure her while chasing the shoplifter.

▮ We hold that no other grounds for relief were stated in plaintiff's complaint because the defendants owed no duty to plaintiff in regard to the other allegations of commission or omission. In *Kirk v. Michael Reese Hospital & Medical Center* (1987), 117 Ill. 2d 507, 513 N.E.2d 387, *cert. denied* (1988), 485 U.S. 905, 99 L. Ed. 2d 236, 108 S. Ct. 1077, the supreme court again set forth the elements for determining whether one has a duty to exercise care in regard to another. The most important element was stated to be foreseeability, provided the foreseeability was reasonable. (*Cunis v. Brennan* (1974), 56 Ill. 2d 372, 376, 308 N.E.2d 617, 619.) The court then recited with continuing approval the other factors set forth in the leading case of *Lance v.*

*Senior* (1967), 36 Ill. 2d 516, 518, 224 N.E.2d 231, 233. These include the likelihood of injury, the weight of the burden in guarding against the injury, and the consequences of putting the burden on the defendant.

The substance of the charges, besides those which we deem sufficient to state a cause of action, are that (1) defendants should have anticipated shoplifters would be in their store; (2) upon stopping a suspected shoplifter, defendants' guard should have restrained the shoplifter; (3) once the shoplifter ran, the guard should not have chased the shoplifter; and (4) defendants should have trained their guards how to properly restrain and pursue shoplifters. Because we conclude the allegations fail to set forth ultimate facts giving rise to the other elements imposing a duty on defendants, we need not decide whether defendants should reasonably have foreseen shoplifters would (1) frequent their store; (2) run, if apprehended and not restrained; and (3) run into and injure customers while they ran.

■ To make sure persons suspected of shoplifting are not able to run from security guards who stop them would place an enormous burden upon the operators of retail establishments. It would require a large force of guards and would also require the guards to use substantial force against each suspect. In the process, guards would be likely to use an amount of force very inappropriate for the arrest of persons charged with the nonviolent and usually misdemeanor classification of the crime involved. Moreover, the guards required to perform those functions would usually not be peace officers and would have authority to arrest only when possessed of "reasonable grounds to believe that an offense *** *is being committed.*" (Emphasis added.) (Ill. Rev. Stat. 1987, ch. 38, par. 107—3.) Imposing such a duty on retailers and their security guards would place too difficult a burden upon them, considering that the likelihood of very serious injury, resulting from a fleeing shoplifter running into a customer, is not very great. Moreover, as we have indicated, a likely consequence of placing this burden on retailers would be use of excessive force by security guards.

Whether a security guard owes a duty to customers not to chase fleeing suspected shoplifters because of the danger the shoplifter will run into a customer presents a closer question. Decisions from other States in this regard are not uniform. In *Williams v. McCrory's Department Store* (La. App. 1978), 354 So. 2d 725, such a duty was held to exist under the foregoing circumstances, while, in *Graham v. Great Atlantic & Pacific Tea Co.* (Fla. App. 1970), 240 So. 2d 157, *Knight v. Powers Dry Goods Co.* (1948), 225 Minn. 280, 30 N.W.2d

536, and *Radloff v. National Food Stores, Inc.* (1963), 20 Wis. 2d 224, 121 N.W.2d 865, the courts found no such duty. See Annot., *Liability of storekeeper for injury to customer arising out of pursuit of shoplifter*, 14 A.L.R.4th 950 (1982).

We hold that security guards have no duty to refrain from pursuing suspected shoplifters under the facts alleged. As we have pointed out, the likelihood of very serious injury resulting to customers from a collision with a customer is not great. The likelihood of such an injury occurring is not increased very much because of the guard's pursuit, since most shoplifters will flee as quickly as possible when they have been stopped, regardless of whether pursuit takes place. The consequence of a rule against pursuit would be a substantial encouragement to shoplifting and would place an unreasonable burden upon the retailer. The duty of the guard is not to refrain from pursuit, but, as we have held in upholding part of the allegations of the complaint, the duty of the guard is to use ordinary care that he not collide with and injure a customer in that pursuit.

Plaintiff relies upon various Illinois decisions concerning customers' causes of action against business proprietors for injuries by criminals occurring on the premises. These cases differ materially from the case on review. In *Cross v. Wells Fargo Alarm Services* (1980), 82 Ill. 2d 313, 412 N.E.2d 472, *Neering v. Illinois Central R.R. Co.* (1943), 383 Ill. 366, 50 N.E.2d 497, and *Duncavage v. Allen* (1986), 147 Ill. App. 3d 88, 497 N.E.2d 433, recovery was sought from owners or occupiers of premises known to be in dangerous areas based upon failure to provide security guards. The danger of injury in those cases was much greater than that from an occasional fleeing shoplifter in the instant case. In *Welsh v. White Castle Systems, Inc.* (1985), 133 Ill. App. 3d 957, 479 N.E.2d 944, and *Jacobsma v. Goldberg's Fashion Forum* (1973), 14 Ill. App. 3d 710, 303 N.E.2d 226, store customers were injured by fleeing thieves when they attempted to stop the thieves at the request of store employees. In *Jacobsma*, the store employees had knowledge that the shoplifter had three days earlier attempted to steal from the store. In none of the cases did the court impose upon the merchant or employees of the merchant the duty to use care to restrain the shoplifter or to refrain from chasing the shoplifter.

Because the allegations concerning negligence on the part of the defendant and their servants in regard to negligence on their part in (1) permitting the suspected shoplifter to run from the guards, and (2) chasing the shoplifter do not concern any duty owed by defendants to plaintiff, we treat those allegations as surplusage. However, as we

have indicated, when chasing the suspected shoplifter the security guard would have a duty to use care to avoid colliding with or otherwise injuring a customer. Accordingly, we reverse the judgment dismissing the amended complaint but direct that on remand the circuit court order such surplusage be stricken from the complaint.

Reversed and remanded with directions.

LUND and SPITZ, JJ., concur.