ROBERTSON, Presiding Judge.
The plaintiff Donald L. Raburn appeals from a summary judgment entered by the Jefferson County Circuit Court in favor of the defendant Wal-Mart Stores, Inc. (“Wal-Mart”), on his claims arising from his being knocked through the exit door and run over by a fleeing shoplifter at Wal-Mart’s retail store in Fairfield. We reverse and remand.
Our standard of review of summary judgments is settled:
“A motion for summary judgment tests the sufficiency of the evidence. Such a motion is to be granted when the trial court determines that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. The moving party bears the burden of negating the existence of a genuine issue of material fact. Furthermore, when a motion for summary judgment is made and supported as provided in Rule 56, [Ala.R.Civ.P.,] the nonmovant may not rest upon mere allegations or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial. Proof by substantial evidence is required.”
Sizemore v. Owner-Operator Indep. Drivers Ass’n, Inc., 671 So.2d 674, 675 (Ala.Civ.App.1995) (citations omitted). Moreover, in determining whether a summary judgment was properly entered, the reviewing court must view the evidence in a light most favorable to the nonmovant. Long v. Jefferson County, 623 So.2d 1130, 1132 (Ala.1993). No presumption of correctness attaches to a summary judgment, and our review is de novo. Hipps v. Lauderdale County Bd. of Educ., 631 So.2d 1023, 1025 (Ala.Civ.App.1993) (citing Gossett v. Twin County Cable T.V., Inc., 594 So.2d 635 (Ala.1992)).
Viewed in a light most favorable to Ra-burn, the non-movant, the record suggests the following facts. On January 20, 1997, Curtis White, one of the Fairfield Wal-Mart store’s “loss prevention associates,” noticed two persons, a male and a female, concealing merchandise inside their clothing. White fohowed the two to the front of the store, and after they had gone through the store’s check-out area without paying for the merchandise, White, acting alone, attempted to apprehend them, pursuant to § 15-10-14, Ala.Code 1975. White confronted the two and asked them to accompany him to the office in the rear of the store. White allowed the shoplifters to follow him (as opposed to keeping them in front of him), and as they walked past the customer-service desk, the male shoplifter suddenly turned away and bolted toward the doors at the front of the store. Before White could react, the male shoplifter had collided with Raburn, who was exiting the *139 store after he and his companion had purchased a watch battery. The force of the collision knocked Raburn through one of the front doors of the store and onto the ground, rendering him unconscious. As a result of the collision, Raburn suffered a severe knee injury. It is not clear from the record whether the male shoplifter was apprehended after he injured Raburn.
Raburn sued Wal-Mart, alleging that his injuries had been caused by negligence or wantonness on the part of Wal-Mart’s agents in pursuing the male shoplifter. Wal-Mart filed a motion for a summary judgment, supported by White’s affidavit and excerpts from the transcript of Ra-burn’s deposition, contending that it was not responsible for the criminal acts of the male shoplifter. Raburn filed a response in opposition, supported by excerpts from and exhibits to the deposition testimony of Wal-Mart’s district loss-prevention supervisor, contending that White had failed to follow Wal-Mart’s internal policies concerning apprehension of shoplifters. The trial court entered a summary judgment in favor of Wal-Mart.
Raburn appealed from the summary judgment to the Alabama Supreme Court. That court transferred the appeal to this court, pursuant to § 12-2-7(6), Ala.Code 1975.
Raburn’s sole argument on appeal is that the record contains sufficient evidence of negligence and/or wantonness to create a genuine issue of material fact. See Rule 56(c)(3), Ala.R.Civ.P.
In determining whether the trial court correctly entered the summary judgment, we start with the well-settled principle that Alabama law generally imposes no initial legal duty upon a defendant premises owner to protect against the criminal acts of a third party. Broadus v. Chevron U.S.A., Inc., 677 So.2d 199, 203 (Ala.1996) (citing Moye v. A.G. Gaston Motels, Inc., 499 So.2d 1368, 1371 (Ala.1986)). Also, there is no dispute that the fleeing shoplifter White had apprehended collided with Raburn during the shoplifter’s flight, causing Raburn’s injuries, and that Wal-Mart, as a merchant, had the privilege of arresting and detaining both shoplifters. See § 15-10-14(a), Ala.Code 1975.
While there is no initial legal duty on the part of a premises owner to prevent injuries to business invitees resulting from criminal acts, Alabama law recognizes the principle that liability to third parties can result from the negligent performance of a voluntary undertaking. See, e.g., Barnes v. Liberty Mut. Ins. Co., 472 So.2d 1041, 1042 (Ala.1985). “ ‘[O]ne who volunteers to act, though under no duty to do so, is thereafter charged with the duty of acting with due care.’ ” Herston v. Whitesell, 374 So.2d 267, 270 (Ala.1979) (quoting United States Fid. & Guar. Co. v. Jones, 356 So.2d 596, 598 (Ala.1977)).
Raburn contends that Wal-Mart is liable because, he says, Wal-Mart’s servant did not follow certain provisions of a “Shoplifter Apprehension Policy” adopted by Wal-Mart to govern the behavior of store employees with respect to suspected shoplifters. That policy, which Wal-Mart has had in place since at least 1994, provides, in pertinent part (the emphasis here indicates bold text in original):

“Policy

“A suspected shoplifter should be observed by a qualified individual at all times while he/she is in the store. Once a person has been observed concealing merchandise, he/she must be continually watched until such time as he/she leaves the store. Only the Store Manager, Assistant Manager or approved Loss Prevention personnel are authorized to apprehend a shoplifter.

“Do not detain anyone suspected of shoplifting until he/she has left the store. If in doubt, do not stop or question him/her.

[[Image here]]
“Decision to Apprehend “Prior to the apprehension of any shoplifter you must:
*140 [[Image here]]
‘%) Allow the shoplifter to exit the vestibule. Remember that apprehension outside the store helps prove intent. By permitting the shoplifter to exit the store prior to making the apprehension, you have allowed that person to go that much farther in establishing his/her trae intent to steal.
[[Image here]]

“The Shoplifter in Your Custody

“Never attempt an apprehension unless you have followed the guidelines set forth in ‘Decision to Apprehend’. “Identify yourself by name and as an Associate of Wal-Mart. Ensure a witness is present.
“Always take one (1) or more Associates with you when you make an apprehension. At least one (1) member of Management should be present.
[[Image here]]
“Upon re-entering the store, have the Associate who is with you follow to see that the shoplifter does not discard the stolen merchandise.”
According to White’s affidavit, he apprehended the two shoplifters inside the Fair-field Wal-Mart store, just past the cash-register area, rather than allowing them to exit the store, as Wal-Mart’s policy requires. Moreover, he did so unaccompanied by management personnel or any other Wal-Mart associate. Thus, when the two shoplifters agreed to follow White to the rear of the store, there was no one behind them that would have been able to watch their movements, and the male shoplifter was able to bolt for the store exit without White being able to react in time to prevent a collision with persons in the entranceway.
Wal-Mart’s adoption of a policy regarding internal apprehension of shoplifters indicates that it was aware of the potential of shoplifting at its stores, including its store in Fairfield. While it was not required to do so, it voluntarily assumed the responsibility of preventing shoplifters from stealing merchandise by authorizing its loss-prevention and management personnel to apprehend shoplifters in conformity with company policy. That policy, however, limited a loss-prevention associate’s authority to apprehend a suspected shoplifter in two principal ways: (1) suspected shoplifters were not to be apprehended inside the store, and (2) apprehensions were always to take place in the presence of an additional Wal-Mart associate.
When the statements in White’s affidavit are viewed in a light most favorable to Raburn, it is obvious that White did not follow Wal-Mart mandates with respect to apprehending and detaining the suspected shoplifters. Although he had no initial duty to protect Raburn against the criminal act of the shoplifter or to apprehend the shoplifters, once White, acting in the line and scope of his employment with Wal-Mart, voluntarily assumed the duty of apprehending the two shoplifters, any negligence or wantonness in White’s discharge of that duty is imputed to Wal-Mart under the doctrine of respondeat superior.
“The liability of a corporation for the torts of its employees, whether agent or servant, is grounded upon the principle of ‘respondeat superiorf,]’ not the principles of agency.... The factual question to be determined is whether or not the act complained of was done, either by agent or servant, while acting within the line and scope of his employment.”
National States Ins. Co. v. Jones, 393 So.2d 1361, 1367 (Ala.1980) (quoting Old S. Life Ins. Co. v. McConnell, 52 Ala.App. 589, 594, 296 So.2d 183, 186 (Civ.App.1974)). Because it is undisputed that White acted within the line and scope of his employment, and because Wal-Mart did not negate the existence of a factual issue with respect to whether it had negligently performed an assumed duty of care in apprehending and detaining the shoplifter who injured Raburn, we must conclude *141 that the trial court erred in entering the summary judgment.
Our conclusion accords with caselaw from other jurisdictions involving similar facts. In Bolden v. Winn Dixie, 513 So.2d 341 (La.Ct.App.), writ denied, 514 So.2d 1177 (La.1987), a customer of a grocery store was knocked to the ground by a shoplifter who fled from a holding area after a store employee assigned to guard him had turned away to have a conversation with another store employee. The customer subsequently recovered damages from the store owner in a negligence action, and the appellate court affirmed the judgment in favor of the customer. In doing so, the court reasoned:
“Once Winn Dixie employees undertook the duty of guarding the shoplifter they were bound to exercise reasonable care in carrying out that duty. There is no indication in the record that the employees of Winn Dixie had any prior dealings with the shoplifter herein. There is no evidence in the record to support a conclusion that the shoplifter was especially cooperative and tame. Furthermore, although the shoplifter did not resist when he was detained, it is clearly foreseeable that a person detained for willful criminal conduct will attempt to escape by running away if given the opportunity to do so. Relaxing one’s guard and looking away while one is guarding a criminal under these circumstances is not reasonable. Winn Dixie’s employees did not exercise reasonable care and hence Winn Dixie breached its duty to protect its customers.”
Bolden, 513 So.2d at 343.
An Illinois appellate court applied similar reasoning in a practically identical case involving another Wal-Mart customer. In Colombo v. Wal-Mart Stores, Inc., 303 Ill.App.3d 932, 237 Ill.Dec. 315, 709 N.E.2d 301 (1999), the court reversed the dismissal of a complaint against Wal-Mart filed by a customer who was knocked into a shopping cart and onto the ground by a fleeing shoplifter. In that case, Wal-Mart security personnel apprehended a suspected shoplifter outside the store and detained him for questioning. The security personnel then escorted the shoplifter back into the store; however, once the shoplifter was back inside the store, he broke free of the Wal-Mart employees and attempted to flee, injuring the customer. In concluding that the customer had stated a claim upon which relief could be granted against Wal-Mart, the Colombo court stated:
“In the present case, the shoplifter was detained and was under the control of Wal-Mart security. Security personnel brought the suspect back into the store, where he broke free and ran. There is no ‘to chase or not to chase’ issue involved in this case. There was little or no chance that the suspect would injure a customer outside the store. When security brought the suspect back into the store, the likelihood of injury to Wal-Mart customers increased. To hold that security personnel who detain a suspect and escort the suspect back into a store have a duty to protect their customers from that suspect does not encourage shoplifting or burden the retailer. It is readily apparent ... that a shoplifting suspect will flee. It is equally foreseeable that the same fleeing suspect will run into a customer. We, therefore, hold that, once security personnel undertook the duty of detaining the suspect and escorting him back into the store, they were under a duty to use reasonable care in carrying out the process.”
237 Ill.Dec. at 317, 709 N.E.2d at 303 (citing Bolden).
Based upon the authorities stated herein, and the materials submitted in support of, and in opposition to, Wal-Mart’s summary-judgment motion, we reverse the summary judgment in favor of Wal-Mart, and we remand the cause for further proceedings.
REVERSED AND REMANDED.
*142 YATES, MONROE, and CRAWLEY, JJ., concur.
THOMPSON, J., dissents.